THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM CALLOWAY, Defendant-Appellant.

First District (1st Division)   No. 78-1267

Opinion filed December 17, 1979.

Ralph Ruebner and Susan Solovy, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Mark X. Vancura, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, William J. Calloway (defendant) was acquitted of attempt murder and found guilty of armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—2). He was sentenced to 15 to 30 years. Defendant appeals.

In this court defendant contends his constitutional right to present a defense was violated when a defense witness was not allowed to try on clothes to show that they fit him and defendant's right to a fair trial was violated by improper closing argument by the State.

Officer George Kozel testified that on January 31, 1975, about 9:30 a.m., he and Officer Veraviec were driving a squad car north on Pulaski Road in Chicago. They noticed a man on 15th Street, 90 feet to the west of their car. This man was walking toward the car. The man saw the car and walked in the opposite direction. The man kept looking back at the car. Kozel turned the car west on 14th Street and back down an alley to 15th Street. They saw the man walking to a vacant lot. Kozel stopped and went over to the man. This man was identified as the defendant.

Kozel inquired from defendant why he had changed his direction so many times and had walked in the middle of the street. Defendant answered he was a garbage man who had been driving a truck. Defendant then pointed to where he said his truck was located. Kozel saw no truck. Defendant began to back away. Kozel made a pat-down search and found an empty black holster on the left side of defendant's waistband. Defendant told Kozel his gun was in a garbage can to which he pointed. Veraviec went toward the can. Kozel continued his search. Defendant said, "I have it, I will show it to you." Defendant jumped back and drew a gun from the back part of his body. Defendant held the gun to Kozel's head and said he would kill him. At defendant's order, Kozel handed his gun to the defendant. Defendant demanded Kozel to direct Veraviec to drop his gun. The officers obeyed. Veraviec began to use his radio and defendant threatened to kill him.

Defendant ordered Veraviec to run down the alley and Kozel to back up. Defendant walked away from the officers. When defendant was about 40 feet away, Kozel pulled out a second gun, yelled, "Hold it" and fired several times. Defendant fired once or twice at Kozel. All shots missed. The defendant ran off between parked cars.

The officers summoned help by radio and began searching the area. Defendant was described by them as a male Negro, about 30, wearing a long blue trench coat, blue work pants, dark stocking cap, a mustache,

goatee and dark sideburns. Kozel testified defendant was wearing at least two pairs of pants.

After about 15 minutes of searching, Kozel and Veraviec were summoned to 1455 South Harding Avenue. Another officer showed them a bundle of clothing found in a front hall. There was a pair of blue work pants, a sweater and a belt. In Kozel's opinion these clothes looked like the clothes defendant was wearing. Kozel and Veraviec then continued their search. They were summoned back to 1455 South Harding at about 10:30 a.m. Kozel testified he found in the apartment several police officers, also a black man and woman and a white man in painter's clothes. Kozel found defendant in a rear room. Part of defendant's sideburns had been removed by shaving. Defendant was wearing a red shirt (too small to be buttoned), blue pants that were too small and no shoes.

Veraviec corroborated the testimony of Kozel. He identified the trousers worn by defendant in the apartment as a pair of jeans with the zipper open. Veraviec arrested defendant and gave him *Miranda* warnings.

Officer Markham answered the initial radio call. He searched the area of 15th Street and Pulaski for the defendant. At 1455 South Harding he saw a glass window had been broken out of the front door. Inside the door, in the front hall, he found a bundle of dark clothes consisting of blue work pants, a sweater and a belt. Kozel told him these clothes belonged to the defendant.

Officer Johnson responded to the radio call and went to 1455 South Harding. He knocked on the door about 9:45 a.m. A black woman admitted him. The officer saw the defendant sitting on a sofa, wearing dark blue clothing, holding a little girl. The officer left the building and returned about 30 minutes later. He responded to the call that a bundle of clothing had been found. Johnson identified this clothing as having been worn by defendant when Johnson first saw him. On this second visit, Johnson saw defendant there but defendant was wearing a red shirt, blue jeans that were too small and one slipper. Some of defendant's facial hair had been cut off. Johnson asked defendant for identification. Defendant responded he had none. Officer McNicholas testified he found a pair of tan work shoes in the bedroom of 1455 South Harding apartment.

Officer Diaz testified he responded to a radio call and participated in the search for the offender. On the back porch of a nearby building at 1458 South Harding, he found a long blue coat. It was wrapped around a brown and white scarf, a gun with a black holster, a wallet containing defendant's identification, about $147 and a man's watch.

Officer Clark testified that pursuant to a call he checked a trash barrel at 15th and Pulaski at about 9:30 a.m. that day. He found a .357 Colt magnum pistol. It was stipulated that this was Officer Kozel's gun. The

officers testified that the .38-caliber revolver found within the long blue coat on the back porch at 1458 South Harding was the gun held on Officer Kozel. This gun contained six bullets, one expended. Kozel and Veraviec testified that the coat found around these items looked like that worn by the defendant when they first saw him. Veraviec testified the black holster found inside the coat had been worn by defendant. It was stipulated the two guns were dusted for fingerprints but none were found.

The defense called Phillip Rachel, a plumber. He testified he was working at 1455 South Harding with his assistant Joe Johnson. Rachel stated he went out to get his tools. When he returned he saw defendant sitting on a couch, dressed in a suit. He did not remember the color of the suit. He identified a green leisure suit shown to him as being like the suit defendant wore. Rachel left after 10 o'clock. Defendant was there when he left. Ann Ivester, a friend of Rachel's, brought him his lunch at about 9:30 or 10 a.m. that morning. She saw defendant dressed in a suit sitting on a couch. It was a dark suit—perhaps green. A defense exhibit, a green leisure suit, could have been the one.

Joe Johnson, assistant to the plumber, testified he was wearing his good clothes and brought work clothes with him. He saw defendant dressed in a leisure suit. He could not identify the defendant's exhibit as the suit defendant wore. After completing his work, he changed out of his pants, sweater and boots and back into his dress clothes. He did not remember if he took his work clothes with him or not. However, when shown the boots, sweater, pants and belt found by the police in the hall, he identified them as his own work clothes. At this point the trial court denied a motion by the defendant that the witness Johnson be permitted to try on the clothes so that the jury could see that they fit him. Johnson testified that at the time of the occurrence he was the same height and weight. He stated his work clothes fit him then and would fit him now.

Elizabeth Ashley testified that about 8:30 that morning she was looking out of the window of a nearby apartment. She saw a red car parked across the street. A tall man came down the street, opened the passenger door and removed a brown coat with a fluffy or fur collar. This man was bearded, had medium brown skin and wore dark clothes and a hat. The man walked away. Another man dressed in a dark suit came out of a store and went to the driver's side of the car. Ashley lifted up the window and told this man, "He went that way." This man she spoke to could have been the defendant although she did not know. She had never met defendant. She did not notice if the man had facial hair.

Johnnie Smith testified he lived in the apartment at 1455 South Harding. He was outside walking his dog at 9 a.m. He knew the defendant. He saw the defendant walking south on Harding Avenue toward 15th Street, dressed in a green suit. Defendant asked the witness if

he had seen a man with defendant's coat as his car had been broken into and someone had stolen his coat. Smith testified he invited defendant to come into the apartment. At that time the two plumbers were also there. The witness stated the police asked him and defendant for identification. He testified he never saw defendant wearing a red shirt, blue pants or slippers and defendant did not shave in his apartment.

The defendant testified he left home about 8:10 a.m. dressed in a green suit. He went to the company for which he worked to pick up some W-2 forms. He was driving a rented automobile. He had a tan leather coat with a white fur collar on the front seat. His watch, wallet and money were in the coat pocket. He stopped at a store on Pulaski to make a phone call. He left the keys in the car and the car unlocked. Upon returning to the car he saw the coat was gone. He saw a woman pointing down the street from a window. He jumped into the car and drove off. He turned down two corners and then met his friend Johnnie Smith. He asked Smith if he had seen the man with the coat. He accompanied Smith to 1455 South Harding. He saw workmen there. He categorically denied that he changed his clothes in the apartment; wore any of the clothing exhibited by the State; went into the bathroom to shave; took a weapon at gunpoint from Officer Kozel or participated in the incident with the officers. He identified a photograph of himself in the green suit as the one taken when he was admitted to the county jail on February 1, 1975. Ellen Vance was not his girlfriend and he had never given that information to the police. He did not think that he had reported his own automobile stolen in 1974.

In rebuttal, the State called Jeffrey Blakey, an officer assigned to the county jail. He had interviewed defendant upon the latter's admission. As shown by the record, defendant then designated Ellen Vance as a person to be contacted in case of an emergency. Officer Vernard McGann testified the gun found with defendant's wallet in the coat was registered to Ellen Vance. Police Officer Whalen Ullrich testified that defendant reported his car as stolen on November 3, 1974. Among the items reported missing was a .32-caliber revolver, property of Ellen Vance.

Defendant raises no issue regarding the sufficiency of the evidence to convict beyond a reasonable doubt. In our opinion, questions of credibility were presented to the jury. Upon review of all of the evidence as above summarized, with particular note of the strong rebuttal evidence presented by the State, we have concluded that the credibility of the defendant and his witnesses leaves much to be desired. The verdict reached by the jury is more than amply supported by evidence of guilt beyond reasonable doubt.

I.

Defendant claims his constitutional right to present a defense was

violated when the trial court refused to allow Joe Johnson to try on the clothes which were found in the hall at 1455 South Harding on the day of the offense. These clothes were identified by Officers Kozel and Veraviec as the clothes worn by defendant during the commission of the offense. Defendant contends that if the jury had seen the clothes fit Joe Johnson, they would more likely have believed the clothes were Johnson's and this would contradict the testimony by the officers that the clothes were worn by defendant.

■■ As a preliminary matter, we do not see a constitutional issue here. While a defendant is entitled to all reasonable opportunities to present evidence which might tend to create a doubt concerning his guilt (*People v. Mosley* (1979), 68 Ill. App. 3d 721, 726-27, 386 N.E.2d 545), "[q]uestions relating to the character of the evidence offered and the manner and extent of its presentation, are largely within the discretion of the trial judge, and the exercise of that discretion will not be interfered with unless there has been an abuse resulting in prejudice to the defendant." *People v. Skidmore* (1966), 69 Ill. App. 2d 483, 488, 217 N.E.2d 431; see also *People v. Schomer* (1978), 64 Ill. App. 3d 440, 444, 381 N.E.2d 62, *appeal denied* (1979), 72 Ill. 2d 584.

■■ In *People v. Gardner* (1977), 47 Ill. App. 3d 529, 537, 362 N.E.2d 14, the court specifically dealt with a trial court's discretion on matters of probativeness and stated:

> "As for issues of relevancy and materiality, the trial court has a 'wide scope for decision' and may reject evidence which it determines to be of little probative value because of its remoteness, uncertainty, or conjectural nature. [Citations.] Although every appellate court might not agree with the trial judge's determination of relevancy, reversal will occur only when abuse of discretion results in prejudice to the defendant. [Citation.] The rationale for this judicial deference is based upon the appellate court's recognition of the trial judge's superior position to balance the factors necessary for a just result, and the appellate court's difficulty in determining if a better overall result would have occurred from a contrary ruling. Even with this latitude given to the trial judge's determination, the record must nonetheless sufficiently reflect those factors which caused the ruling so that upon review the appellate court can discern whether or not there was an abuse of discretion resulting in prejudice to the defendant. [Citation]."

■■ Applying these principles to the instant case, it is evident that the trial judge acted within his sound discretion in not allowing Johnson to try on the clothes. Officers Kozel and Veraviec both testified defendant was wearing these clothes during the commission of the crime. Joe Johnson

contradicted the testimony of the officers by testifying these clothes were his own and he brought them to work with him on the morning of the crime and had forgotten them at 1455 South Harding. These divergent stories left only the credibility of these witnesses as a matter for the jury to decide. At no time during the cross-examination of Johnson did the State question Johnson's assertion that the clothes fit him. The judge indicated his willingness to allow Johnson to try on the clothes if and when the fit of the clothes did become an issue in the case. However, the fit never in fact became an issue. Thus, the trial judge properly rejected the request for Johnson to try on the clothes. This demonstration would have little or no probative value as to the issue of who was actually wearing the clothes at the time of the offense.

Furthermore, the jury itself saw both the defendant and Johnson. Each juror could decide for himself whether the clothes would fit both men equally well just by comparing the physical frames of the two men. We find no abuse of judicial discretion here.

## II.

Defendant raises several issues regarding closing argument by the State. The State first responds that all of these points have been waived because they were not raised in defendant's written motion for new trial. It is generally correct that failure "to raise an issue in the written motion constitutes a waiver and the issue cannot be urged as a ground for reversal on review." (*People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227. See also *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.) In our opinion, for reasons hereinafter stated, none of the contentions made by defendant in this regard should be considered as plain error. (See *Precup*, 73 Ill. 2d 7, 16-17.) We therefore hold that these arguments have been waived. We shall consider them, but only for the sake of completeness.

When Officer Kozel testified he mentioned that the police had ordered a canine unit. The canine unit was mentioned in the testimony of Officers Veraviec and Markham regarding the calling of the unit. The trial court sustained defense objections to testimony about the canine unit. In final argument the assistant State's Attorney said that "the officers were there with dogs." The assistant State's Attorney then added, "Ladies and Gentlemen, are the dogs liars, too?" Defense counsel objected immediately. The trial court properly sustained the objection to the latter comment and ordered it stricken from the record. In our opinion, although this remark was neither suitable nor proper, the prompt admonition to the jury by the trial court after sustaining the defense objection was sufficient to eliminate any possible error from the remark. See *People v. Jones* (1970), 47 Ill. 2d 135, 141, 265 N.E.2d 125. See also *People v. Singletary* (1979), 73 Ill. App. 3d 239, 253, 391 N.E.2d 440, and cases there cited.

The remaining three instances of allegedly improper closing argument were comments by the assistant State's Attorney on the alleged theory of defendant that he was the victim of a police conspiracy. The State's Attorney asked the jury categorically if he, his trial assistant and the police officers looked like conspirators. He asked if the man who testified about registration of the gun was "in on this big frame?" He said the defense tactics were to put the police department on trial and thus make the jurors forget about the evidence.

The State's Attorney also told the jury that he had "only been around a couple of years" but he had seen the defense of a frame-up many times and the purpose was to divert the attention of the jury.

Up to this point no objection was made. The State's Attorney then proceeded to say that the police department was not on trial and the only allegation of wrongdoing against the department came from the defendant because, "He had to think of something to say." At this point defense counsel objected and said defendant was not obliged to present evidence. The trial court promptly sustained this objection.

■ As we view this situation, the only objection made by defense counsel was to the final statement of the prosecutor and this objection was promptly sustained. Insofar as the balance of the final argument is concerned, where objections are not made during final argument, the error is waived. *People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273. See also *People v. Moore* (1973), 55 Ill. 2d 570, 576, 304 N.E.2d 622.

■ We will add that despite the lack of objection we have considered all of the final arguments in the light of the evidence before us. There are a number of additional cogent reasons for our conclusion that these arguments, considered individually or collectively, did not constitute reversible error. The final arguments here were not " 'a material factor in the conviction * * * ' " (*People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363). We cannot say from this record that the arguments resulted in "substantial prejudice to the accused." (*People v. Nilsson* (1970), 44 Ill. 2d 244, 248, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881.) We cannot conclude that "the verdict would have been different had the improper closing argument not been made * * *" (*People v. Trice* (1970), 127 Ill. App. 2d 310, 319, 262 N.E.2d 276). We find no reversible error in any ruling by the trial court regarding final argument. *People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324.

The judgment appealed from is accordingly affirmed.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.