(No. 52417.-■■■■■■■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. GLENN D. WARMACK, Appellee.

*Opinion filed December 1, 1980.*

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, and Marcia B. Orr and Joel A. Stein, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Glenn D. Warmack, was charged by information with the murder and attempted armed robbery of Willie D. King. In a jury trial in the circuit court of Cook County, defendant was found guilty of both offenses and sentenced to concurrent terms of imprisonment of 30 to 75 years for murder and 5 to 15 years for attempted armed robbery. On appeal by defendant, the appellate

court held that the circuit court had erred in limiting defendant's impeachment of a prosecution witness, and it reversed the judgments and remanded the cause for a new trial. (73 Ill. App. 3d 783.) The appellate court also held that a prosecutor had made improper comments in his opening argument and that the circuit court had erred in admitting a mug shot of defendant, but the appellate court expressed no opinion on whether this was sufficiently prejudicial to require a new trial. We granted the State leave to appeal.

On May 28, 1976, at approximately 11:20 a.m., Willie D. King was killed in his record store at 5921 South Halsted Street in Chicago. According to Martha Morrow, a woman who was in the store at the time, the killer was a young black man, approximately 18 to 24 years of age, and he approached the store on "a yellowish bike," wearing a billed black cap, a dark short jacket, dark pants, and a gold hoop-style earring. At trial, Miss Morrow was shown a dark waist-length jacket, a dark pair of pants, and a black cloth cap with a small bill, and she identified these items as the clothes worn by the killer. She also identified defendant, seated in the courtroom, as the killer.

According to Miss Morrow, defendant had entered the store, asked Willie King for a Fats Domino record, and grabbed her as King began to look for the record. Defendant pointed a gun at King and said, "Don't move." Miss Morrow looked up into defendant's face, and as King turned, defendant shot him once. The bullet entered King's chest, lacerated King's heart and a lung, and resulted in massive internal bleeding and death. According to Miss Morrow, defendant said "Money" after shooting King. Defendant then fled from the store, mounted his bicycle, and rode south toward 60th Street.

Martha Morrow further testified that two police officers visited her at her home on May 31, 1976, a few days after the killing. The officers showed her eight photo-

graphs of young black men, and she identified one individual pictured as the killer. At trial, she was again shown the eight photographs, and she indicated that the one that she had picked earlier was that of defendant.

On cross-examination, Miss Morrow acknowledged that, of the eight men pictured, only defendant wore his hair in braids; that only defendant's picture had no name on the back; that she had told a police officer at the scene that the killer was between 5 feet 4 inches and 5 feet 6 inches tall and weighed between 140 and 160 pounds. The record indicates that defendant was 6 feet tall and 157 pounds when he surrendered on June 1, 1976. Defense counsel asked Miss Morrow to estimate defendant's height, but a prosecutor asked that the jury first be informed "that Mr. Warmack is wearing approximately, my estimation, four inch heels and about an inch platform on the shoes." At the direction of the court, defendant walked in front of the jury, and Miss Morrow estimated his height to be 6 feet 4 inches or 6 feet 5 inches.

Martha Morrow also acknowledged on cross-examination that she once told the police that the killer wore a leather jacket; that she could not tell if the killer had long or braided hair because he wore a cap but that some hair was hanging from below the bill of the cap; and that the police had actually brought the eight photographs to her home twice on May 31, 1976, but that she did not pick out any on their first visit. Miss Morrow also estimated that defendant was in the store "a minute or more" and that she looked at his face a second or two before he shot King.

On redirect examination, Miss Morrow explained that she first identified herself as Denise Brown and failed to pick out defendant's picture because she did not want to get involved and because she was afraid of what defendant might do to her.

Prior to the testimony of its next witness, Edna Scott,

the State moved to prohibit the impeachment of Scott with her 11-year-old felony conviction of attempted robbery and a 9-year-old misdemeanor conviction of soliciting for prostitution. The State argued that the attempted-robbery conviction lay beyond the 10-year limit enunciated in *People v. Montgomery* (1971), 47 Ill. 2d 510, and also that the prejudicial effect of evidence of that conviction outweighed its probative value. The State further argued that evidence of either the attempted robbery or solicitation conviction would be improper because of the witness' rehabilitation. Defense counsel argued in response that both convictions were proper subjects for impeachment and that the passage of 10 years between conviction and a subsequent trial is not alone determinative. Following arguments, the court granted the State's motion as to both convictions, and it specifically rejected defense counsel's contention that the solicitation conviction evidenced dishonesty on the part of Miss Scott. Defendant moved for a declaration of mistrial, but the motion was denied. We are concerned on appeal with only the attempted-robbery conviction. Defendant does not question the circuit court's ruling as to the solicitation conviction, apparently since that offense was not "punishable by death or imprisonment in excess of one year" and did not involve "dishonesty or false statement." *People v. Montgomery* (1971), 47 Ill. 2d 510, 516, quoting Proposed Federal Rule of Evidence 609(a).

When called to the stand, Edna Scott testified that she was in a drugstore at 5900 South Halsted Street shortly before the killing. She left the drugstore with the intention of going to King's record store, but as she approached it, she heard a shot, and a young black man ran out. Miss Scott estimated that the man was 5 feet 9 inches tall, 155 to 160 pounds, and in his 20's, and she said that he was wearing a black cap, black pants, and a black waist-length jacket. When shown the articles of clothing previously

shown to Miss Morrow, Miss Scott identified them as the clothes worn by the man. According to Miss Scott, the man jumped on a bicycle after leaving the store, and he rode south to 60th Street and then east on 60th.

The following day, Edna Scott went to a police station to look at pictures, and she picked out one as that of the man who had run out of King's record store. She pointed out that the man pictured wore his hair in little braids as did the man who ran out of the store. A couple of days later, Miss Scott viewed six men in a lineup. At trial, she was shown a picture of the lineup, and she circled the head of the person she picked. She then identified defendant as that person.

Ray Luth, an investigator for the Chicago Police Department, was next called by the State to testify. It was Luth and another investigator, James Kehoe, who brought the eight photographs to Martha Morrow on May 31, 1976. Luth explained that, when Miss Morrow was first shown the photographs, she hesitated when looking at defendant's picture, but she failed to identify any of the men pictured as the killer. Luth and Kehoe left, returned one hour later, and Martha Morrow then identified defendant as the killer. Miss Morrow indicated to Luth, as she had testified, that she did not first identify defendant because she was frightened.

On June 1, 1976, Luth and Kehoe visited Margaret Hoffman, defendant's aunt, in her home at 604 West 61st Street, approximately three or four blocks from the scene of the killing. Luth testified that he asked Mrs. Hoffman if she had any of defendant's clothes and if he could have them. Mrs. Hoffman showed Luth where defendant's clothes were located, and he recovered a black cap, a dark blue waist-length jacket, a pair of black pants, a short-sleeved maroon sweatshirt, and a pair of brown and green suspenders. At trial, Luth verified that the articles of clothing produced by the State for the trial were, in fact, those

taken from Mrs. Hoffman's home.

On cross-examination, Luth acknowledged that the picture shown Martha Morrow, actually a mug shot of defendant, was dated December 4, 1975, almost six months prior to the killing. On re-cross-examination, defense counsel asked if the date on the mug shot meant that the picture was taken in 1975, and Luth responded affirmatively.

Kenneth Hamilton was also called by the State, and he testified that he was in the vicinity of 61st and Halsted or 61st and Union, a couple of blocks east of Halsted, on the morning of the killing. He was wearing orange pants, a green leather jacket, and a black cap. He saw defendant, whom he knew, riding a bicycle near 61st and Union, coming from the north. After exchanging greetings with defendant, Hamilton borrowed defendant's bicycle but was stopped by police within a minute. The police took Hamilton to the scene of the killing, and witnesses there told police that Hamilton was not the killer.

On cross-examination, Hamilton stated that the bicycle was not black or yellow at all, perhaps with the exception of the seat and handle grips, which may have been black. When Hamilton was brought to the scene, he thought that witnesses were saying that the killer was darker and taller than he, but he indicated at trial that he "wasn't able to hear that well."

Following Hamilton's testimony, the court was presented a stipulation indicating that defendant was 20 years old at the time of the killing and 21 years old at the time of trial. The State also moved for the admission of various exhibits, including the mug shot of defendant. Defense counsel objected to admission of the mug shot on the ground that it included an arrest date of December 4, 1975, thereby indicating an arrest prior to the date of the offenses now charged. The State refused to delete the arrest date, and in support of its effort to have the mug shot admitted, the State cited *People v. Maffioli* (1950),

406 Ill. 315. The court initially reserved its ruling on the question but later admitted the mug shot over strenuous objection by the defense.

James Kehoe, investigator for the Chicago Police Department and partner of Ray Luth, was the first witness called by the defense. He revealed that Edna Scott had once identified a man by the name of Earl "Mad Dog" Jackson as the killer when shown photographs in a police station.

On cross-examination by the State, Kehoe testified that Miss Scott, after identifying Jackson, wanted to see Jackson in person to make sure that he was the killer. Jackson was not apprehended, and at a subsequent viewing of a lineup, Miss Scott identified defendant as the killer. Kehoe acknowledged, upon further questioning by defense counsel, that Jackson was not in that lineup.

Thomas Bennett, a Chicago police officer, was also called by the defense and testified that Martha Morrow had once said that the killer's bicycle was black. As noted earlier, Miss Morrow testified at trial that the bicycle was "yellowish."

John Wesley Gentry was the final witness called by the defense, and he identified himself as the son of Margaret Hoffman and the cousin of defendant. Gentry did not live at his mother's home, but he estimated that defendant slept there five to seven nights a week. When shown the articles of clothing produced for the trial by the State, Gentry identified a pair of suspenders as his. He said that the pants, jacket and shirt belonged to someone named Ramon, a coworker. He explained that Ramon and he had changed clothes at his mother's home approximately two days after the killing, and the clothing was left there. Gentry said that he did not know who owned the cap, and he did not think that the clothes would fit defendant.

On cross-examination, Gentry said that Ramon is 5 feet 9 inches tall and 153 pounds, and he estimated his

waist size to be 30 inches. Gentry said that he did not bring Ramon to court to verify his ownership of the clothes because no one asked him to do so.

In rebuttal, the State moved to require defendant to don the clothing it had produced, with the exception of the cap, citing *Holt v. United States* (1910), 218 U.S. 245, 54 L. Ed. 1021, 31 S. Ct. 2, *People v. Tomaszek* (1964), 54 Ill. App. 2d 254, *cert. denied* (1965), 382 U.S. 827, 15 L. Ed. 2d 72, 86 S. Ct. 62, and Supreme Court Rule 413(a)(v) (73 Ill. 2d R. 413(a)(v)). The State argued that no self-incrimination problem was present because that privilege only prohibits testimonial compulsion, and it argued that such a demonstration would be relevant to the claim of the defense that the clothing did not fit defendant. Over strenuous objection by the defense, the court granted the State's request.

Before the jury viewed the demonstration, the State also asked the court to allow an assistant State's Attorney to hold the pants up to his waist. The attorney was 5 feet 9 inches tall, the same height as Ramon, alleged by the defense to be the owner of the pants. The purpose of this demonstration, according to the State, would be to show the excessive length of the pants on a man of that size, but the court denied the request.

With defendant wearing the pants and jacket and standing in front of the jury box, the court called the jury in, allowing it to view defendant in that clothing. Although the record contains no comment at this time by the court or counsel as to how the clothing fit, defense counsel expressed his opinion in closing argument that the sleeves on the jacket were too long on defendant. Following this demonstration, the State rested its case. A request by defense counsel that he try on the jacket before the jury was denied.

Following its deliberations, the jury returned a verdict of guilty of both murder and attempted armed robbery.

Defendant filed a motion for a new trial alleging, *inter alia,* error in the court's restriction of the impeachment of Edna Scott, in the admission of defendant's mug shot, and in requiring defendant to model the pants and jacket produced by the State. The motion was denied, and the court proceeded to sentence defendant to concurrent terms of imprisonment of 30 to 75 years for murder and 5 to 15 years for attempted armed robbery. The appellate court reversed and remanded, and this appeal by the State followed.

The basis of the appellate court's reversal was its conclusion that, under *People v. Ray* (1973), 54 Ill. 2d 377, the circuit court committed prejudicial error in prohibiting the defense from impeaching prosecution witness Edna Scott with her 11-year-old attempted-armed-robbery conviction. Under our recent decision in *People v. Yost* (1980), 78 Ill. 2d 292, 294-95, this conclusion of the appellate court was in error. The appellate court was, as we said in *Yost,* understandably misled by the decision in *Ray.*

In *Yost,* we reviewed the subject of impeachment by prior conviction, and we held that the rule set out in *People v. Montgomery* (1971), 47 Ill. 2d 510, is the rule to be applied. That rule states, in pertinent part:

" 'Rule 609. Impeachment by Evidence of Conviction of Crime

'(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere,* is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.

'(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than 10 years has

elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date.' " (47 Ill. 2d 510, 516, quoting proposed Federal Rule of Evidence 609(b).)

In *People v. Ray* (1973), 54 Ill. 2d 377, 383, the court mistakenly quoted a different version of proposed Rule 609(b) which provided that evidence of a conviction would not be admissible for impeachment purposes " 'if a period of more than 10 years has elapsed since the date of the release of the witness from confinement imposed for his most recent conviction, or the expiration of the period of his parole, probation, or sentence granted or imposed with respect to his most recent conviction, whichever is the later date.' " In *Yost,* we explained that this mistaken quotation in *Ray* "was a regrettable inadvertency" *(People v. Yost* (1980), 78 Ill. 2d 292, 296), and we held that no deviation from the *Montgomery* rule was intended.

Under the *Montgomery* rule, the impeachment of Edna Scott with her 11-year-old attempted-armed-robbery conviction would not be proper. Although punishable by imprisonment in excess of one year and therefore within *Montgomery's* general rule of admissibility, the conviction occurred 11 years before trial, did not result in confinement and therefore lay beyond the 10-year limit. Miss Scott was placed on probation as a result of the conviction, and her probationary period extended to within nine years of the trial in this case. Under *Yost* and *Montgomery,* however, and unlike the rule mistakenly quoted in *Ray,* the expiration date of a witness' probationary period is not a consideration in determining when the time requirements for admissibility are met. The circuit court therefore properly prohibited this impeachment of Miss Scott, and the appellate court erred in reversing defendant's convictions on the basis of the circuit court's ruling on this issue.

Defendant argues that *Yost* be applied prospectively only, but we find no basis for doing so. *Yost* did not involve the announcement of a new rule, which would raise the question of retroactivity, but rather the reaffirmation of *Montgomery*.

Seeking to sustain the appellate court's reversal of his convictions, defendant contends that he was prejudiced by improper argument by the prosecutor and by certain evidentiary errors. Defendant first argues that he was unduly prejudiced by a comment made by a prosecutor during opening argument which attributed to defendant ownership of the clothing produced at trial; defendant claims that the State never proved this assertion at trial. In response to the argument, the appellate court stated: "Although ownership of the clothing could be inferred from the evidence as brought forth at trial, the prosecutor should not have asserted defendant's ownership in his opening statement in the absence of specific proof at trial. We trust that such comments will be avoided on retrial." (73 Ill. App. 3d 783, 793.) The post-trial motion of defendant contained in the record does not mention this question, and we are inclined to hold that the argument is waived. (*Cf.* 73 Ill. 2d R. 366(b)(2)(iii).) We are troubled by the holding of the appellate court on this point, however, and we consider it to be in the interest of justice to clarify this matter.

A commonly recognized purpose of opening argument is to inform the finder of fact of what the evidence will show. (*Gillson v. Gulf, Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 197.) We agree with the appellate court that "[i]t is improper for a prosecutor to comment on what testimony will be introduced at trial and then fail to produce that evidence" (73 Ill. App. 3d 783, 793, citing *People v. Rogers* (1976), 42 Ill. App. 3d 499), but that simply is not what occurred here. Sufficient evidence was presented from which the jury could reasonably infer that

defendant owned the clothing, and such circumstantial evidence was sufficient to support the assertions of the prosecutor in his opening argument. Circumstantial evidence can supply the basis for a conviction (*People v. Williams* (1968), 40 Ill. 2d 522, 526, *cert. denied* (1969), 393 U.S. 1123, 22 L. Ed. 2d 129, 89 S. Ct. 1004), and opening arguments need not be limited to a discussion of direct evidence. We hold that an opening argument can include a discussion of matters that may reasonably be inferred from the evidence.

On a point also involving the clothing produced at trial, defendant argues that the circuit court erred in forcing him to model the clothing before the jury. Defendant does not allege a violation of his privilege against self-incrimination, and such an argument would not prevail, since no testimonial compulsion was involved. (See, *e.g.*, *Holt v. United States* (1910), 218 U.S. 245, 252-53, 54 L. Ed. 1021, 1030, 31 S. Ct. 2, 6; *People v. Tomaszek* (1964), 54 Ill. App. 2d 254, 262-63; see also 73 Ill. 2d R. 413(a)(v).) He argues that fit of the clothing was not at issue, that the demonstration was not relevant to any other issue in the case, and that the demonstration would only serve to show that defendant was one of many people whom the clothes would fit. On this point, we agree with the appellate court that fit and ownership were at issue and that the demonstration would be of some probative value to the jury in answering these questions. Specifically, we note the testimony of the defense witness Gentry that the clothing belonged to someone named Ramon and would not fit defendant. A demonstration that the clothing fit defendant, though not of itself establishing that defendant wore that clothing at the time and scene of the crimes, would be entitled to some weight, to be considered by the jury in conjunction with other corroborative evidence from which the guilt or innocence of defendant could be determined.

*People v. Calloway* (1979), 79 Ill. App. 3d 668, relied upon by defendant, does not support his position on this issue. The appellate court there found no error on the part of the trial judge in refusing to allow a defense witness to model clothing recovered near the scene of an armed robbery with which the defendant was charged. Two police officers called by the prosecution testified that defendant wore the clothing during the commission of the offense, but the witness testified that the clothing was actually his and that he had forgotten it. Unlike the present case, however, "fit never in fact became an issue" (79 Ill. App. 3d 668, 674), and the appellate court therefore held that the trial judge properly rejected the defendant's requested demonstration. The appellate court also pointed out that its function in reviewing evidentiary rulings is to determine whether the trial court abused its discretion (79 Ill. App. 3d 668, 673), and finding that the demonstration requested "would have little or no probative value as to the issue of who was actually wearing the clothes at the time of the offense" (79 Ill. App. 3d 668, 674), the court found no abuse of discretion on the part of the trial judge. Similarly, we find no abuse of discretion on the part of the trial judge here, since he could well conclude that a demonstration would be of some probative value as to facts in dispute, such as fit.

Defendant also contends that the State failed to prove him guilty beyond a reasonable doubt. We do not agree. Defendant was identified by eyewitnesses in photographic displays, a lineup and at trial, and another witness placed defendant near the scene riding a bicycle. Corroborating physical and circumstantial evidence, such as the recovery from defendant's residence of the clothing identified as having been worn by the killer, further buttressed the State's case. Significantly, the defense impeached one eyewitness by showing her prior identification of someone other than defendant as the killer, and the defense ably

pointed out other weaknesses in the State's proof. We cannot say, however, that the efforts of the defense created a reasonable doubt of guilt. At best, the defense raised questions of fact and credibility properly left for resolution by the jury. *People v. Miller* (1980), 79 Ill. 2d 454, 466; *People v. Manion* (1977), 67 Ill. 2d 564, 578.

Defendant has also argued that the prosecutor's questioning of Investigator Ray Luth concerning his visit at the home of defendant's aunt, Margaret Hoffman, was improper because it was conducted in such a way as to allow the jury to infer the hearsay responses of Mrs. Hoffman. This contention was not raised by objection at trial, by post-trial motion, or in defendant's initial appellate court brief (73 Ill. 2d Rules 341(g), 612(i)), and it is waived. Our review of the sufficiency of the evidence convinces us that this alleged defect is not the sort of apparent defect "affecting substantial rights" that we may notice although not questioned in the trial court. 73 Ill. 2d R. 615(a).

Finally, defendant has argued that the trial judge erred in admitting defendant's mug shot bearing an arrest date prior to that of the offenses now in question. The error in revealing a prior arrest is obvious, and we agree with defendant on this point. Evidence of the prior arrest was not relevant to any matter in issue, and it should not have been made available to the jury. (*People v. Hawkins* (1972), 4 Ill. App. 3d 471, 474-75; *People v. Williams* (1966), 72 Ill. App. 2d 96, 102.) *People v. Maffioli* (1950), 406 Ill. 315, cited by the State, involved a mug shot with an arrest date subsequent to the date of the offenses charged, and the picture may well have resulted from the defendant's arrest for those charges. In reviewing what we believe to be the abundant evidence of guilt, however, we have concluded that this error is harmless. We have considered the totality of the evidence presented and can safely conclude that a trial without this error would pro-

duce no different result. In this regard, we especially note that defendant's allegation of prejudice is somewhat speculative. To hold that this error is reversible would require us to presume that the jury recognized the arrest date for what it was, realized that the arrest date preceded the date of the offenses with which defendant was charged, and then adjudicated defendant's guilt on the basis of this prior arrest rather than the evidence produced at trial. We do not believe that justice requires that this course be taken. (See, *e.g., People v. Butler* (1974), 58 Ill. 2d 45, 49 (vague and indirect references to a previous arrest for murder held to be harmless since the possibility of an effect on the jury was speculative).) As the appellate court has capably noted in *People v. Scarpelli* (1980), 82 Ill. App. 3d 689, 697, the concern of a reviewing court is prejudicial error, and the court need not determine that a trial was devoid of error before affirming a conviction. (See *People v. Tranowski* (1960), 20 Ill. 2d 11, 17, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290.) It is our judgment that no prejudicial error occurred here.

For the foregoing reasons, judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*