THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GORDON SIMS, Defendant-Appellant.

First District (5th Division)  No. 1—94—2592

Opinion filed November 27, 1996.

Michael J. Pelletier and Yasemin Eken, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Mari R. Hatzenbuehler, Assistant State's Attorneys, of counsel), for the People.

JUSTICE COUSINS delivered the opinion of the court:

Defendant, Gordon Sims, was convicted of first degree murder after a jury trial and was sentenced to 40 years' imprisonment. On appeal, Sims argues that: (1) the State, during closing argument, erroneously implied that a State witness had changed his testimony at trial because he was afraid of the defendant; (2) the jury was improperly allowed to view a mug shot of defendant, which showed that he had been previously arrested for another crime; (3) the trial court erroneously admitted inadmissible hearsay evidence that improperly bolstered the credibility of a crucial State witness; (4) the trial court erred by allowing the State to impeach its own witness with a prior inconsistent statement even though the witness' testimony at trial did not damage the State's case, and the trial court then erroneously instructed the jurors to consider this prior inconsistent statement as substantive evidence, although the court had earlier ruled this evidence admissible for impeachment purposes only; and (5) the State improperly introduced prejudicial evidence about the victim's family and made inflammatory remarks about the family during closing argument.

BACKGROUND

On August 30, 1990, the victim, Marvin Brown and his wife, Faye Brown, went to the first floor of an abandoned building located at 4651 West End to smoke cocaine. Three other individuals named Bee, John, and Stuart were also with them. About an hour later, Marvin and John began to argue. Faye told Marvin to buy John a couple of bags of cocaine. Marvin, John and Bee went to get the cocaine. Faye stayed behind and looked out the window. About 15 to 20 minutes later, Faye heard Marvin outside arguing with defendant. At trial, Faye identified the defendant, Gordon Sims, as the person she knew as "G-Man." She stated that she knew G-Man before, from "when he was standing around selling drugs." Marvin and defendant were arguing about a beeper. Faye ran outside and got between Marvin and defendant, who were standing face to face, arguing. She stood

there for about five minutes. Marvin threw his hands up and asked defendant why he was messing with him. At that time, Faye grabbed Marvin's arm and started to push him toward the building. Defendant walked away but then turned back around and shot Marvin. Then he got into a car and drove away.

Officer Ramon Saragosa went to West End and Kilpatrick to investigate the incident. When he arrived at the scene, he observed a black male, whom he later identified as Marvin Brown, lying on the ground with a bullet in his midsection and blood on his shirt. Saragosa called for an ambulance and tried to seal off the crime scene. At trial, Saragosa testified that, while at the scene, he spoke with Marvin Davis. Pursuant to this conversation, Saragosa transmitted a "flash message" in which he described the suspect as a black male who went by the name of G-Man, approximately 5 feet 10 inches tall, 170 pounds, with gray and black hair and bulging eyes. The officer also transmitted that the male offender was with two or three black males in a white Pontiac 6000, four-door vehicle travelling westbound from West End.

On August 31, 1990, Detective Patrick Foley became involved in the investigation. He proceeded to the scene of the incident with his partner, Detective Frank Gross. There, Foley spoke to Marvin Davis. He then interviewed Davis at the police station. At trial, Davis testified that on the night of August 30, and in the early morning hours of August 31, he was with his aunt, Luvinia Bonds. Earlier that evening, Faye Brown and Luvinia Bonds had been in Bonds' apartment with him and they all had been smoking cocaine. Davis testified that he was inside Bonds' first-floor apartment and was looking out the window watching Faye Brown, G-Man, and several other people. Davis stated that he heard Marvin Brown and G-Man arguing over a beeper. According to Davis, G-Man turned and walked away from Marvin. Davis said that, at that point, his attention was diverted to something that happened in the apartment. Davis said that he heard a gunshot, went back to the window, and saw Marvin fall to the ground. He then observed G-Man walk away, get in his car, and leave. Davis also testified that he did not see anything in defendant's hands.

At this point in the trial, a sidebar conference was held. The State indicated that Davis' testimony about what he had observed was inconsistent with his grand jury testimony. The State wanted to introduce Davis' prior grand jury statement as substantive evidence. After a lengthy discussion, the trial judge ruled that he would allow the State to question Davis with regard to his grand jury testimony and introduce the evidence as substantive evidence.

The State then indicated that it wanted to introduce a prior inconsistent statement that Davis had made to the detectives. The judge permitted the State to lay a foundation for the admission and cautioned the State that, if Davis denied making a statement to police, the statement would not be admissible as substantive evidence.

During another sidebar conference, the State also told the court that it wanted to question Davis about a conversation between him and defendant on the Friday before trial where defendant allegedly told Davis "Don't make a mistake" as they passed by each other in the "bullpen" at the Department of Corrections where both men were being held. During a *voir dire* of Davis, Davis indicated that he was not sure what defendant said to him that Friday. Consequently, the court ruled that the evidence was irrelevant and inadmissible because Davis could not recall what defendant said to him, and because Davis indicated that the conversation had no impact on him.

When questioning of Davis resumed, Davis testified that he had been interviewed by Detectives Gross and Foley. He testified that he did not recall telling the detectives that he saw G-Man take a gun from his waistband and shoot Marvin Brown. Davis did not remember telling the detectives that Marvin told G-Man he had a beeper for him and that G-Man said it didn't matter since Marvin did not have the beeper with him. Davis also testified that he did not remember telling police that Marvin said G-Man did not have to speak to him that way.

Davis further testified that he had appeared before the grand jury on September 24, 1991, and was questioned about the shooting of Marvin Brown, but that he did not recall telling the grand jury that he saw defendant shoot Marvin Brown. The State asked Davis whether anyone other than Gordon Sims had a gun during the incident. Davis answered that he did not see a weapon at all. The State then read the grand jury transcript and asked Davis whether he was asked, "Did anyone else out there other than Gordon Sims have a weapon?" and whether he answered "no" to that question. Davis testified that he did not remember being asked that question and that he did not see any weapon during the incident. On re-cross-examination, Davis reiterated that he did not see defendant shoot Marvin Brown.

Detective George Tray testified that, on August 31, 1990, he reviewed the available reports in the case, proceeded to the graphic arts and identification section at the station, and secured photographs of Gordon Sims. He then went to the home of Faye Brown and showed her a group of six photographs. Brown identified a photograph of defendant as the person who shot Marvin Brown. She then signed the back of the photograph in the presence of the detectives.

On September 2, 1990, Detective Tracy went to 4651 West End to canvass for witnesses. There he found Luvinia Bonds. He took Bonds to the police station to view a group of photos. Bonds viewed five photos and identified defendant as the person who shot and killed Marvin Brown. After Bonds made the identification, she signed the back of the photo. At trial, Bonds testified that, at the time of the incident, she was living at Kilpatrick and West End in an abandoned building. On August 30, 1990, she was in her bedroom on the first floor. When she looked out the window, she saw G-Man, Marvin Brown, and several other people. Bonds testified that she heard defendant and Marvin Brown arguing, so she stood on a bench and continued to look out the window. According to Bonds, G-Man started to walk away, then turned around and shot Marvin Brown. On cross-examination, Bonds admitted that when she first spoke with police officers after the incident, she initially told them that she never saw who shot Marvin Brown. She testified that she made the statement to the police because she had an outstanding warrant and did not want to remain at the station.

On September 5, 1991, defendant was released to the custody of Detective Greg Bronsberg from the Jackson, Michigan, law enforcement authorities.

During the jury instructions conference, defense counsel objected to sending the mug shots that were used in the photo identification by Faye Brown and Luvinia Bonds to the jury during its deliberations. The pictures depicted defendant and four other black males with name plates hanging from their necks. The court ruled that the jurors had a right to see the photographs, but decided the name plates would be blackened out by coloring over the plates with a black marker. Prior to jury deliberations, the court advised the jurors that the court had blackened out certain portions of the photographs contained in the photo array exhibits. The court instructed the jurors that they were not to concern themselves with the reasons for the blacked-out areas, and they were not to attempt to determine what was blackened out during their view of the items.

The jury found defendant guilty of first degree murder. Defendant was sentenced to 40 years' imprisonment in the Illinois Department of Corrections.

We affirm.

OPINION

I

Defendant complains that the prosecutor's remarks during clos-

ing argument implied that Marvin Davis changed his testimony at trial because he was afraid of defendant and, therefore, constituted reversible error. During rebuttal closing argument, the State argued, over defense counsel's objections:

"Marvin Davis said G-Man did it. And you heard the exact words when the court reporter (referring to Davis' testimony before the grand jury) came in here and testified. But what happened to Marvin Davis since then, why does this tell you that is the truth, Marvin Davis now can't hide. Marvin Davis now—. Marvin Davis now can't move away. Marvin Davis is in the Illinois Department of Corrections. And Marvin Davis said that Friday was the day he saw the defendant. And yesterday, Marvin Davis came in here and said, I can't remember saying in the Grand Jury that I saw G-Man shoot Marvin Brown. I can't remember anything, is what Marvin Davis said when asked about this man [defendant].

\* \* \*

But there were a couple of questions he couldn't remember. Why do you think he can't remember those questions. Think maybe he's a little scared?"

Defense counsel objected and moved for a mistrial. The court overruled the objection.

Defendant argues that the prosecutor's comments were prejudicial because they improperly suggested, without basis in the record, that Marvin Davis was afraid to testify because he had been threatened by the defendant. Conversely, the State responds that the State's rebuttal closing argument was proper where it was based on the evidence adduced at trial and explained why Marvin Davis' trial testimony differed from what he told the police immediately after the incident and from what he testified to before the grand jury. Furthermore, the State argues that there was no reference or allegation that Davis was scared or intimidated specifically by the defendant, nor were the prosecutor's statements highlighted, repeated or emphasized so as to constitute a material factor in defendant's conviction, without which the jury might have reached a different result.

■ Prosecutors are afforded wide latitude in closing argument, and improper remarks will not merit reversal unless they result in substantial prejudice to the defendant, considering the context of the language used, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial. *People v. Thompkins*, 121 Ill. 2d 401, 445, 521 N.E.2d 38 (1988). Generally, prosecutorial comments that suggest that witnesses are afraid to testify because defendant threatened or intimidated them, when not based upon any evidence in the record, are highly prejudicial and inflammatory.

*People v. Mullen*, 141 Ill. 2d 394, 405, 566 N.E.2d 222 (1990), citing *People v. Ray*, 126 Ill. App. 3d 656, 467 N.E.2d 1078 (1984). In the case *sub judice*, however, the prosecutor's comments did not result in substantial prejudice to the defendant. Nor do we find that the prosector's remarks constituted a material factor in the defendant's conviction.

Defendant relies on *People v. Mullen*, 141 Ill. 2d 394, 566 N.E.2d 222, in which the supreme court held that a prosecutor's references to an eyewitness' fear of testifying constituted plain error. We believe that *Mullen* is distinguishable from the instant case on its facts. In *Mullen*, the court found plain error where the prosecutor suggested that witnesses were reluctant to testify because they were afraid the defendant would shoot them. 141 Ill. 2d 394, 566 N.E.2d 222. At trial, a State witness refused to answer questions about a shooting incident to which he was an eyewitness. *Mullen*, 141 Ill. 2d at 397-98. Outside the presence of the jury, the trial judge asked the witness why he did not want to answer any further questions. In an in-chambers conference, the witness told the judge that he did not want to get involved in the case because he was afraid of some boys "around the house." *Mullen*, 141 Ill. 2d at 398. The court then continued the case until the next day. The next day, the witness agreed to testify. Outside the presence of the jury, the court admonished the attorneys not to ask the witness any questions, or make any references, as to why he was initially reluctant to testify. When the witness continued his testimony, he testified about what he had seen at the shooting. *Mullen*, 141 Ill. 2d at 398.

During closing argument, the prosecutor argued that "one of the most powerful things in this case was when [the witness] got up on the stand and said he did not want to answer" because he did not want a bullet in his back. *Mullen*, 141 Ill. 2d at 401. The court found that the prosecutor's statements were prejudicial, as they suggested that defendant threatened or intimidated witnesses so they would not testify against him. Furthermore, the court found that the prosecutor's comments were improper where they were not based on any evidence in the record. The court noted the emphasis placed on the witness' reluctance to testify and characterized the State's argument as "egregious," as well as a "blatant disregard as to proper argument and the orders of the trial court." *Mullen*, 141 Ill. 2d at 407.

■ Although there are similarities between *Mullen* and the instant case, we agree with the State that *Mullen* is inapposite. Unlike *Mullen*, in the instant case, the comments conformed to the evidence in the record. Furthermore, the prosecutor in the instant case

did not violate the trial court's order not to refer to an excluded comment, "Don't make a mistake," that the defendant was alleged to have made to Davis. Conversely, in *Mullen*, the prosecutor specifically referred to the evidence that the trial court excluded. The comments here were not egregious, differed in degree from *Mullen*, and were not comparable to the highly prejudicial comments in *Mullen*. Here, the complained-of remarks were also comparatively brief. Assuming, *arguendo*, the comments were improper, in our view plain error did not occur and the error in argument in this case was harmless, as the evidence against the defendant was not close.

II

Defendant next contends that he was denied a fair trial where the trial judge allowed the jury to view a mug shot of the defendant showing that defendant had been previously arrested for another offense.

■ The supreme court explained in *People v. Arman*, 131 Ill. 2d 115, 545 N.E.2d 658 (1989), that testimony relating to the use of mug shots in an investigation may be introduced to show how a defendant was initially linked to the commission of an offense when identification is a material issue at trial. *Arman*, 131 Ill. 2d at 123; *People v. Dunigan*, 263 Ill. App. 3d 83, 625 N.E.2d 522 (1994). A police photograph is admissible to show the reasonableness of a witness' identification that the offender and the person depicted are the same. *People v. Byrd*, 43 Ill. App. 3d 735, 741, 357 N.E.2d 174 (1976). While mug shot evidence should not be admitted if it tends to inform a jury of a defendant's commission of other, unrelated criminal acts, the erroneous admission at trial of mug shot evidence suggesting the defendant's involvement in unrelated offenses does not automatically warrant reversal. *Arman*, 131 Ill. 2d at 124.

Defendant points out that the jury in this case knew that the photo array was shown to Faye Brown and Luvinia Bonds before the defendant was arrested for the present offense, and, thus, the jury would have known upon seeing the mug shot of the defendant that he had previously been arrested for another offense. Defendant's argument is similar to the argument presented and rejected in *People v. Warmack*, 83 Ill. 2d 112, 413 N.E.2d 1254 (1980).

In *Warmack*, the defendant argued that the trial judge erred in admitting defendant's mug shot bearing an arrest date prior to that of the offenses at issue. *Warmack*, 83 Ill. 2d 112, 413 N.E.2d 1254. The court acknowledged the error in admitting such specific evidence of the prior arrest. However, the court found that to hold this error reversible would require a presumption that the jury recognized the

arrest date for what it was, realized that the arrest date preceded the date of the offenses with which defendant was charged, and then adjudicated defendant's guilt on the basis of this prior evidence rather than the evidence produced at trial. The court rejected this presumption. *Warmack*, 83 Ill. 2d 112.

■ In the instant case, the mug shot was material. A crucial issue in this case was the identification of defendant. Luvinia Bonds and Faye Brown both testified that they knew defendant as G-Man. Both Bonds and Brown then identified G-Man from his mug shot photo. The mug shot was then properly admitted into evidence, where it was introduced for the purpose of showing how defendant was identified.

Moreover, the mug shot was less indicative of prior arrests than the mug shots in *Warmack*. Like the court in *Warmack*, we decline to presume that the defendant's undated mug shot, rather than the evidence presented at trial, provided the basis upon which the jury adjudicated defendant's guilt.

Furthermore, we agree with the State that, even if defendant was granted a new trial and the mug shot evidence was excluded, the omission of the mug shot evidence would not be likely to produce a different result in light of the eyewitness testimony from Luvinia Bonds and Faye Brown. See *Arman*, 131 Ill. 2d at 124 (holding that when the competent evidence in the record establishes the defendant's guilt beyond a reasonable doubt and it can be concluded that retrial without the erroneous admission of the challenged evidence would not produce a different result, the conviction may be affirmed).

### III

Defendant also argues that he was denied a fair trial where the trial court erred in admitting inadmissible hearsay evidence that improperly bolstered the credibility of a crucial state witness. We disagree.

■ Hearsay is testimony of an out-of-court statement offered to show the truth of the matter asserted in the statement. *People v. Gaurige*, 168 Ill. App. 3d 855, 864, 522 N.E.2d 1306 (1988). To establish his course of conduct, a police officer may testify that he had a conversation with an individual and that he subsequently acted on the information received. *People v. Johnson*, 199 Ill. App. 3d 577, 582, 557 N.E.2d 446 (1990). The officer cannot, however, testify as to the substance of the conversation with the individual because that would be inadmissible hearsay. *Johnson*, 199 Ill. App. 3d at 582.

■ At trial, police officer Ramon Saragosa testified that, when he arrived on the scene of the incident, he spoke with Davis. Pursuant

to this conversation, Saragosa indicated that he transmitted a "flash" message over the radio. The State maintains that the officer's testimony about the flash message was not hearsay because it was not offered to prove the truth of the matter asserted in the statement, but was offered to explain why the police investigation was conducted in the manner that it was. We agree with the State. The inference logically to be drawn from the officer's flash message is that the information received accounts for the officers' subsequent conduct. *People v. Gacho*, 122 Ill. 2d 221, 248, 522 N.E.2d 1146, 1159 (1988), citing *People v. Hunter*, 124 Ill. App. 3d 516, 529, 464 N.E.2d 659 (1984). However, the officer did not testify as to the content of his conversation with Davis. Rather, Officer Saragosa testified that a conversation took place and then testified as to what he said regarding the offender's identity. What the officer said was not hearsay as it was not admitted to assert the truth of the information received or disseminated. *People v. Hunter*, 124 Ill. App. 3d 516, 529, 464 N.E.2d 659 (1984). This testimony was competent to establish investigatory procedure. See *People v. Gacho*, 122 Ill. 2d 221, 522 N.E.2d 1146 (1988) (supreme court held officer's testimony was properly admitted where police officer testified to what he did and to investigatory procedure pursuant to a conversation with a witness).

Assuming, *arguendo*, that the testimony by the police officer was improper, any prejudice was cured by the trial court's limiting instruction. The trial court instructed the jury and stated:

> "The fact that he (Officer Saragosa) gave out information is not being offered for the truth of the matter asserted, not being offered for the truth of the information received or disseminated. It is only being offered to bring to your knowledge the course of the investigation. Whatever information he received or disseminated would be hearsay and is not being admitted for the truth of what was said but only to explain the course of the investigation."

It can be presumed that the jury followed the court's instructions and used the evidence for its limited purpose. Accordingly, we hold that Officer Saragosa's testimony was properly admitted.

## IV

Defendant next contends that he was denied a fair trial where the trial court erred by allowing the State to impeach its own witness with a prior inconsistent statement and then instructing the jury to consider this statement as substantive evidence.

At trial, Marvin Davis took the stand as a witness for the State. He testified that he did not see defendant shoot Marvin Brown. The State then proceeded to impeach Davis with his prior grand jury testimony and statement to police detectives wherein he stated that he had seen defendant shoot Marvin Brown.

610

■ Supreme Court Rule 238(a) (134 Ill. 2d R. 238(a)) permits a party to impeach its own witness with a prior inconsistent statement. However, to do so, a party must show that the witness' testimony has damaged rather than failed to support the position of the impeaching party. *People v. Weaver*, 92 Ill. 2d 545, 563, 442 N.E.2d 255 (1982). It is only when the witness' testimony is more damaging than his complete failure to testify would have been that impeachment is useful. *Weaver*, 92 Ill. 2d at 563-64. The effect of evidence admitted for impeachment is that it tends to (1) discredit the witness (*People v. Cruz*, 162 Ill. 2d 314, 359, 643 N.E.2d 636 (1994)), and (2) cancel the witness' damaging testimony (*Weaver*, 92 Ill. 2d at 563). The prejudice suffered when such evidence is improperly admitted is that it places before the jury evidence that tends to support rather than damage the State's case. See *Weaver*, 92 Ill. 2d at 563. Defendant relies on *Weaver* and contends there was reversible error in admitting Davis' prior statement to the police detectives for impeachment purposes when Davis' testimony at trial failed to support the State's case but was not damaging to the State's case. Thus, the issue here is whether Davis' testimony damaged, rather than failed to support, the State's case.

■ Prior to trial, Davis stated that he saw defendant pull a gun from his waistband and shoot Marvin Brown in the stomach. At trial, however, Davis took the stand as a witness for the State, but testified that he did not even see defendant with a gun and did not see defendant shoot Marvin Brown. The State then questioned Davis about his grand jury testimony and his prior statement to the police detectives. Davis' grand jury testimony was properly adduced and admitted as substantive evidence pursuant to section 115—10.1(c)(1) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10.1(c)(1) (West 1992)). In our view, however, Davis' statement to the police detectives was not properly admitted as impeachment under Supreme Court Rule 238(a) (134 Ill. 2d R. 238(a)) in that it merely failed to support, rather than damage, the State's case. However, since Davis' grand jury testimony was identical to the statement he made to the police detectives, the use of Davis' statement to the police was cumulative and the error was harmless. See *People v. Chatmon*, 236 Ill. App. 3d 913, 930-31, 604 N.E.2d 399 (1992).

■ Defendant also argues that the trial court then erroneously allowed the jurors to consider both Davis' testimony to the grand jury and his statement to the police as substantive evidence. At trial, the court read verbatim to the jury the jury instruction contained in the Illinois Pattern Jury Instructions, Criminal, No. 3.11 (3d ed. 1992) (hereinafter IPI Criminal 3d No. 3.11) for prior inconsistent state-

ments. Defendant contends that the court's previous ruling that Davis' prior statement to the police could only be used for impeachment required that the court separate each of Davis' inconsistent statements and advise the jury which statement it could consider for impeachment purposes and which to consider for substantive purposes. Defendant maintains that such separation would comply with the committee notes to IPI Criminal 3d No. 3.11, which state, in pertinent part:

"The Committee believes that all evidence is substantive unless limited to a non-substantive purpose, such as impeachment. That is why the Committee recommends that the first and last paragraphs of this instruction be given orally to the jury without bracketed material when the earlier inconsistent statement is being offered for a limited, non-substantive purpose. This instruction should then be given again in the final, written instructions." IPI Criminal 3d No. 3.11, Committee Comments, at 82.

Defendant argues that this error was compounded when the prosecutor, during closing arguments, made no distinction between which statement could be considered for substantive evidence or for impeachment purposes only. Defendant concludes that, as a result of these errors, the jurors must have considered Davis' statement to the police as substantive evidence, thus improperly bolstering Davis' credibility in favor of the State.

Initially, we note that the committee comments to the jury are advisory and the trial court is allowed to deviate from the suggested instructions and format where necessary. *People v. Whitaker*, 263 Ill. App. 3d 92, 98, 635 N.E.2d 1008 (1994). Nevertheless, our consideration of the instructions regarding impeachment is similar to our view of the impeachment issue. Regarding those instructions, in our view, the portion of the instructions regarding impeachment was improper on this issue. However, because of the grand jury testimony that was properly admitted as substantive evidence, the improper instructions were harmless error.

### V

■ Defendant's last contention is that he was denied his right to a fair trial where the State introduced prejudicial evidence about the victim's family and made inflammatory remarks about the family during closing argument. Defendant cites several comments in which the State referred to Marvin Brown's family. The State first commented about the family during opening argument. The prosecutor stated, "[T]he story begins with a man by the name of Marvin Brown. Marvin Brown was a son, he was a husband, he was a father, and regrettably he was a drug user." The prosecutor made similar state-

ments in closing argument. Defendant also refers this court to statements elicited in Cliffie Brown's testimony. Cliffie Brown, the victim's mother, testified as the life and death witness. During the State's examination of Cliffie, the State elicited that Marvin Brown had been married and had four children. Later, Faye Brown testified that she had been married to Marvin Brown and that they had four children together. The State maintains that the references to Marvin Brown's family were brief and fleeting and, therefore, could not have resulted in prejudicial error to the defendant.

Jury argument by the prosecution that dwells upon the decedent's family or seeks to relate a defendant's punishment to the existence of family is inflammatory and improper. *People v. Hope*, 116 Ill. 2d 265, 275, 508 N.E.2d 202 (1986). However, every mention of a deceased's family does not *per se* entitle the defendant to a new trial. *People v. Bartall*, 98 Ill. 2d 294, 322, 456 N.E.2d 59 (1983). The prosecutor's comments in this case are factually distinct from those cases in which the prosecution's consistent comments about the victim's grieving family required reversal. See *People v. Bernette*, 30 Ill. 2d 359, 371, 197 N.E.2d 436 (1964); *People v. Hope*, 116 Ill. 2d 265, 508 N.E.2d 202 (1986); *People v. Logan*, 224 Ill. App. 3d 735, 586 N.E.2d 679 (1991). Here, the prosecutor's comments can be characterized as incidental. The defendant was not prejudiced by these comments.

For the forgoing reasons, we do not find that the alleged errors denied defendant a fair trial. Accordingly, the defendant's conviction is affirmed.

Affirmed.

McNULTY, P.J., and GORDON, J., concur.