THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN MALASZENKO, Defendant-Appellant.
First District (4th Division)   No. 78-446

Opinion filed August 30, 1979.

Reilley, Bell & Weinberg, of Chicago (Eva Field, of Blum, Field & Marbell, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (John J. Moran, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

After a trial in the circuit court of Cook County, a jury convicted

the defendant, John Malaszenko, and his co-defendant, Diane Kosanovich, of armed robbery and theft. (Ill. Rev. Stat. 1977, ch. 38, pars. 18—2 and 16—1.) The trial court sentenced Malaszenko to concurrent terms of 25 to 50 years imprisonment for armed robbery and 5 to 10 years for theft. In this appeal, Malaszenko contends that the trial court committed reversible error in (1) failing to suppress evidence found at his home and in his car; (2) failing to instruct the jury on the offense of plain robbery; (3) refusing to sever his case from Kosanovich's; (4) sentencing him for the theft conviction; (5) considering the theft conviction as a factor in sentencing him for armed robbery; and (6) sentencing him to an excessive term of imprisonment for armed robbery. Kosanovich appealed her conviction separately. *People v. Kosanovich* (1979), 69 Ill. App. 3d 748, 387 N.E.2d 1061.

On August 2, 1976, a man and a woman robbed Howard Kodner's art and antique store in Glencoe, Illinois. The man, identified by Kodner as Malaszenko, and the woman, identified by Kodner as Kosanovich, had posed as customers in the store for about 30 minutes, occasionally asking Kodner questions about his merchandise. When the only other patron in the store left, they accosted him. The man pointed a flintlock pistol at Kodner, saying "you're dead." The woman pushed a long, silvery, knife-like object at Kodner's neck, warning him not to sound any alarms. The pair forced Kodner to lie face down, the woman holding the object at his neck, and bound him with rope and tape. They began taking items out of the back door of the store. At one point the male robber returned and again threatened Kodner with death. After they left, Kodner loosened his bonds and called the police.

On the following day, a woman sold several items, later identified as articles stolen in the Glencoe robbery, to a Chicago antique store. The woman signed the receipt of sale for them as "Diane Kosanovich" and listed a Chicago address. The clerk of the Chicago store testified that he noticed that the woman had a deformed thumb. Kosanovich has a deformed thumb.

On August 5, 1976, the police went to the address listed on the sales receipt. Kosanovich's mother, who resided there, identified police sketches of the robbery suspects as her daughter, Diane, and Diane's friend, Malaszenko, and told the police that they might find the pair at Malaszenko's home in Northlake, Illinois.

Three or four a.m. the next morning, several police officers from various area jurisdictions, arrived without warrants at the Malaszenko home. Some were in uniform and at least one officer had his gun drawn. It was raining. Malaszenko's 65-year-old mother, a native of Austria living in the United States for the past 27 years, answered their knock. She told the officers that neither Malaszenko nor Kosanovich was there. The police,

although admitting that they believed her, asked if they might check the house to verify her denial. She requested that they wait a few minutes, left to lock up her dog, and then admitted the police into the house. The police checked several rooms of the house and the garage. From the wall of Malaszenko's bedroom they confiscated a flintlock pistol. From the garage they seized several articles stolen from the Glencoe store. Malaszenko's mother gave them a recent photo of him and told them that "John was a good boy" led astray by Kosanovich.

Sometime after this, Malaszenko and Kosanovich were arrested. Malaszenko's car, parked in front of the location of the arrest, was towed to the Glencoe police station. Four days later, the police, without a warrant, inventoried its contents. In its back seat they found a red identification tag which had been attached to one of the stolen articles found in Malaszenko's garage.

Malaszenko made a motion to suppress all items taken from his home. His mother testified at a hearing on the motion, through an interpreter. She said that the police "hollered" for her to "open up" and that she was frightened because her understanding of English is limited and she was alone. She denied consenting to the search of her home.

The trial court ruled that Malaszenko's mother voluntarily consented to the search of her home for her son and Kosanovich. The court determined that the flintlock pistol found hanging in Malaszenko's room was in "plain view" and could be properly admitted into evidence. However, the articles in the garage, it was ruled, were found while the police were acting "beyond the scope of the consent" and therefore were suppressed.

Before the trial, but after four jurors had already been chosen, Malaszenko made a second "supplemental" motion to suppress the tag found in the inventory of the car. The trial court denied the motion as untimely, noting that Malaszenko had notice of the tag through the State's discovery responses received before the initial motion to suppress was made.

Malaszenko argues that the court erred in failing to suppress both the flintlock pistol seized in the search of his home and the red identification tag taken in the inventory of his car. First, he contends that the search of his house was made without his mother's consent and that even if the police obtained consent for the search, they did not have the right to confiscate the flintlock pistol. We disagree.

■■ We cannot accept Malaszenko's argument that the search of the house was made without his mother's consent. Whether his mother voluntarily gave her consent to the search is a question of fact to be determined from the totality of the circumstances. (*Schneckloth v.*

*Bustamonte* (1972), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041; *People v. DeMorrow* (1974), 59 Ill. 2d 352, 320 N.E.2d 1.) When that determination rests on an evaluation of conflicting testimonial evidence, a review court must accept the finding made by the trial court unless it is clearly unreasonable. *People v. Peterson* (1959), 17 Ill. 2d 513, 162 N.E.2d 380.

■■ While one might infer from a warrantless night raid by a group of armed officers that intimidation rather than voluntary consent caused the invitation to inspect the Malaszenko home, that inference is not conclusive from those facts. In this case the court had an opportunity to hear Malaszenko's mother and evaluate her language abilities. The judge made a specific finding that she had the capacity to appreciate and understand English. Further, the court explicitly interpreted her actions in locking up her dog so that the police could inspect the house and giving the police a picture of her son as evidence that the search was voluntary. These findings and conclusions are not unreasonable. Because Malaszenko's argument is predicated on an interpretation of the evidence alone, we must defer to the trial court and affirm the decision that the search of the home was made with the consent of Malaszenko's mother.

■■ Furthermore, we find that the trial court was correct in determining that the police confiscated the flintlock pistol within the limited scope of their search of the home for the suspects. At the time of the search, the police knew that a flintlock pistol was used by the man who robbed the Glencoe store. The police observed a similar weapon hanging, in open view, on the wall of Malaszenko's bedroom and the police were in that bedroom, as shown above, with the permission of Malaszenko's mother. Any article in plain view, seen by the police while within the scope of a search, can be seized if that article is evidence of criminal activity. (*People v. Sprovieri* (1969), 43 Ill. 2d 223, 252 N.E.2d 531.) Certainly, commission of an armed robbery with a flintlock pistol is unique, at least in this century, and a similar flintlock in the home of a suspect of such a robbery can be said to be evidence of criminal activity. We agree with the trial court that the police could properly seize the flintlock pistol.

Next, Malaszenko argues that the tag found in his car after his arrest should be suppressed. He asserts that the trial judge erred in ruling that his "supplemental" motion to suppress was untimely. We cannot agree. The supplemental motion was made after the conclusion of a lengthy hearing on his motion to suppress and after four jurors were chosen for the trial. The record demonstrates that sometime prior to Malaszenko's first motion to suppress and certainly prior to the time the hearing was held, Malaszenko's attorney had received the State's discovery responses which apprised him of the tag's existence. The State furnished him with a list

that said "all items described in the police reports" might be used as evidence in its case against Malaszenko. The defense attorney was also given a police report which listed a red tag with identifying numbers as "believed to be an item" stolen in the Glencoe robbery. The report stated that the tag was connected with an item listed in the inventory from the robbery through identifying numbers and that the item was found in Malaszenko's garage. However, in filing his supplemental motion to suppress the tag, the defense attorney stated that he only became aware of the existence of the tag after the hearing on his initial motion to suppress.

■ Section 114—12(c) of the Illinois Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 114—12(c)) states that motions to suppress "shall be made before trial unless opportunity therefor did not exist or the defendant was not aware of the ground for the motion." The record shows that the trial court extensively questioned both the prosecutor and the defense attorney as to the exact time the defense attorney received the police report and the discovery response. The trial court concluded that the defense counsel had the police report and discovery response in ample time before the initial motion to suppress so that at the time of the initial motion he should have been aware of the tag. In light of the defense attorney's possession of these items prior to the trial, the lack of any evidence showing he reasonably would not have been aware of the grounds for the supplemental motion, and following the procedure outlined in section 114—12(c), we must agree with the trial court that the supplemental motion to suppress the red tag found in the back of the car was untimely.

Similarly, we must reject Malaszenko's charge that the trial court abused its discretion when it refused to sever his case from that of his co-defendant, Kosanovich. Whether to grant a separate trial is a question to be evaluated within the trial court's discretion, on the basis of the degree of antagonism between the defenses of those being jointly tried. (*People v. Yonder* (1969), 44 Ill. 2d 376, 256 N.E.2d 321.) Malaszenko predicates his argument for severance in this case on the ease of identification of his co-defendant Kosanovich because of her deformed thumb. Malaszenko also points out that other evidence tying Kosanovich to the crime was extensive, while he characterizes the evidence against him as "virtually minimal."

■■ Malaszenko fails to point out any aspect of Kosanovich's defense which could be considered antagonistic to his. Further, his characterization of the evidence in the trial is undervalued. Most notably, three evidentiary ties, independent of Kosanovich, link him to the crime. First, Kodner, the victim, identified him as the male robber, and the evidence shows that Kodner had ample opportunity to view and speak with

Malaszenko. This identification of Malaszenko as one of the robbers is founded on the interchange between Kodner and Malaszenko and not Malaszenko's association with Kosanovich. Second, the flintlock pistol found in Malaszenko's home matches Kodner's description of the weapon used by the male robber. Finally, the red identification tag found in Malaszenko's car proved to be at one time attached to one of the stolen articles. The failure to show antagonism, coupled with the independent evidence, negates Malaszenko's argument for severance.

Malaszenko contends that the jury should have been instructed on the lesser crime of plain robbery in this case because there was some evidence that, if believed, would have permitted the jury to convict him of this lesser offense. Malaszenko lists the fact that the flintlock found in his home was inoperable and the fact that the victim's identification of the gun used in the robbery was not substantial because he only saw a few inches of the gun protruding from his assailant's sleeve as evidence that it is possible that "plain" robbery instead of armed robbery occurred.

■■ A review of the records shows that there was no evidence available from which the jury could infer that Malaszenko committed anything less than armed robbery. The rule is that if any evidence in the record could support a conviction on a lesser offense, the instruction concerning the lesser offense should be given. (See *People v. Willis* (1977), 50 Ill. App. 3d 487, 365 N.E.2d 300.) However, where none of the evidence can be interpreted to indicate an unarmed robbery, such an instruction is properly refused. *People v. Thompson* (1976), 35 Ill. App. 3d 773, 342 N.E.2d 445.

■■ ■ In this case, the robbery victim unequivocally stated that Malaszenko held a flintlock pistol and that Kosanovich held a knife-like object on him during the robbery and that they threatened him with these weapons. The fact that he only saw inches of the barrel of the flintlock is not evidence that a weapon was not used. (See *Thompson.*) Further, an article which looks like a gun and is used as a gun is a dangerous weapon for purposes of the armed robbery statute even if the weapon is inoperable or incapable of inflicting harm. (*People v. Hill* (1977), 47 Ill. App. 3d 976, 362 N.E.2d 470.) We find that there was no basis for the plain robbery instruction in this case.

Finally, Malaszenko argues that we must vacate both his armed robbery and theft sentences. First, he states that the theft sentence cannot stand because it arose out of the same acts as the armed robbery conviction; second, that the armed robbery sentence should be vacated and the cause remanded for resentencing because that sentence was made with the taint of the invalid theft conviction; and third, that the sentence for armed robbery was excessive.

The State agrees that the sentence for the theft charge must be

vacated. (*People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.) However, we do not find it necessary to vacate the sentence for armed robbery and remand this cause for resentencing. In *People v. Carmickle* (1977), 46 Ill. App. 3d 112, 360 N.E.2d 794, a defendant was separately sentenced for two convictions and one conviction was vacated because it was a lesser included offense. That court held that when there is no evidence that the properly vacated offense was a factor considered in sentencing the defendant for the second conviction, it is not necessary to vacate the second conviction and remand for resentencing. *Cf. People v. Guppy* (1975), 30 Ill. App. 3d 489, 333 N.E.2d 576, where a court vacated a sentence and remanded the cause for resentencing when one sentence was given for 13 convictions and some of those convictions were reversed.

■■ In the instant case Malaszenko was separately sentenced for each conviction and we find no indication in the record, nor does Malaszenko point to any particular words by the judge, which would demonstrate that the theft conviction was a factor considered in the sentence for armed robbery.

■■ Finally, we do not find that the length of Malaszenko's sentence, by itself, requires that we reverse it. Although the sentence Malaszenko received for the armed robbery is severe, it is not without the term prescribed by the statute, when having regard to the nature and circumstances of the offense and the history and character of the defendant, the court sets a higher minimum term. (See Ill. Rev. Stat. 1977, ch. 38, pars. 1005—8—1(b)(2), 1005—8—1(c)(2).) Malaszenko's multiple convictions for theft, robbery and armed robbery, his imprisonment for these and the fact that he had been on parole at the time he committed the instant offense, support the trial court's determination that a higher minimum sentence beyond the four years prescribed by statute was required.

The imposition of a sentence is a matter of judicial discretion, and absent an abuse of that discretion, a sentence may not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Here, other than arguing that the length of the sentence is excessive because it does not give enough weight to the possibility of rehabilitation, Malaszenko points to no instance where the trial court considered an improper factor, ignored a relevant one or otherwise abused its discretion in imposing the sentence. In such a situation, especially in light of Malaszenko's criminal history, a review court cannot upset the original sentence. *Perruquet; People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673.

The judgment on the defendant's conviction for theft and the

sentence imposed on it are vacated. The sentence and conviction for armed robbery is affirmed.

Vacated in part, affirmed in part.

JOHNSON and LINN, JJ., concur.